ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

JAN 23 2014

JAMES N. HATTEN, Clerk
By: /s/ Edwards
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL INFORMATION |
| v. : | |
| : | NO. 1:14-CR-025 |
| KODY JON PETERSON : | |
| : | |
| a/k/a "SnappzMarket Dev" : | |
| : | |
| DEFENDANT : | |

THE UNITED STATES ATTORNEY CHARGES THAT:

1.  From in or about May 2011, through on or about August 21, 2012, the exact dates being unknown, in the Northern District of Georgia and elsewhere, defendant KODY JON PETERSON, a/k/a "SnappzMarket Dev," did willfully, knowingly and unlawfully combine, conspire, confederate, agree and have a tacit understanding with G.S., J.T., S.W., and others known and unknown to the United States Attorney, to commit certain offenses against the United States, including the following: to willfully, and for purposes of commercial advantage and private financial gain, infringe copyrights by reproducing and distributing, during a one hundred and eighty (180) day period, at least ten copies of one or more copyrighted works having a total retail value of more than $2,500 in violation of Title 17, United States Code, Section 506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1) and 2.

## Background

2. It is relevant to this Information that, during the time period relevant to this conspiracy:

    a. Defendant KODY JON PETERSON and conspirator G.S. established an alternative online market, called "SnappzMarket," for the purpose of reproducing and distributing pirated copies of Android mobile device software applications (or "apps") to SnappzMarket users in the Northern District of Georgia and elsewhere, and for purposes of commercial advantage and private financial gain through advertising revenue.

    b. Defendant KODY JON PETERSON was primarily responsible for writing the computer code necessary to operate the SnappzMarket alternative online marketplace, under the web domain "www.snappzmarket.com," and the computer code creating the SnappzMarket app necessary to distribute pirated copies of apps to SnappzMarket users' Android mobile devices. Defendant KODY JON PETERSON was also responsible for configuring and operating a server in the Netherlands that hosted database content for SnappzMarket operations, and operating a server in France that hosted the SnappzMarket

group's pirated copies of copyrighted apps and web content for SnappzMarket.

    c.    Conspirator G.S. was primarily responsible for handling the finances of SnappzMarket. Conspirator G.S. also uploaded pirated copies of copyrighted Android apps onto SnappzMarket's computer servers.

    d.    Conspirator J.T. provided the computer servers necessary to host the initial version of SnappzMarket.

    e.    Conspirator S.W. was primarily responsible for handling public relations for SnappzMarket. In this role, conspirator S.W. monitored the Facebook fan page for SnappzMarket, provided responses to support inquiries, developed new ideas for SnappzMarket, and assisted with finding solutions to technical problems. In addition, conspirator S.W. searched for and downloaded copies of copyrighted apps, burned those copies to digital media such as compact discs ("CDs"), and mailed them to conspirator G.S.

Manner and Means

3.    The manner and means by which the conspiracy was carried out included, but were not limited to, the following:

    a.    The object of the conspirators' illegal agreement was to unlawfully obtain, reproduce, and distribute copies of copyrighted works,

namely, Android mobile device apps, through an alternative online market, called "SnappzMarket," without permission from the software developers and other owners of these copyrighted works, who would otherwise sell lawful copies of the apps on legitimate Android online markets for a fee to the general public.

b.  It was a part of the conspiracy to obtain by various means copies of the aforementioned apps that lacked any technological protection measures controlling access to, or copying of, the copyrighted software for the apps. For example, conspirators circumvented or removed ("cracked") such access controls or copy controls on authorized copies of the apps, and did so without permission from the copyright owners of the apps. Other conspirators, such as defendant KODY JON PETERSON, reproduced and obtained over the Internet copies of apps that were already "cracked" by others – also without permission from the copyright owners.

c.  It was further a part of the conspiracy to rent computer servers, including servers located in the United States, France, and the Netherlands, to host one or more websites, such as "www.snappzmarket.com," and to provide digital storage for pirated copies of copyrighted apps to allow conspirators to upload, download,

store, and ready pirated copies of copyrighted Android apps for distribution to SnappzMarket users.

    d.    It was further a part of the conspiracy to pay for and to register Internet domain names for use by SnappzMarket users, including www.snappzmarket.com.

    e.    It was further a part of the conspiracy to distribute pirated copies of the apps to SnappzMarket users without authorization from the copyright owners. Defendant KODY JON PETERSON created a SnappzMarket app that SnappzMarket users could download to their Android mobile devices. Through the SnappzMarket app, conspirators could distribute copies of the pirated apps from SnappzMarket's computer servers directly to SnappzMarket users' Android mobile devices.

    f.    It was further a part of the conspiracy for conspirator G.S. to use PayPal and other bank accounts to receive on behalf of SnappzMarket (1) income generated from online advertisement services, including Adsense and Admob, on www.snappzmarket.com and (2) donations from SnappzMarket users. After conspirator G.S. transferred SnappzMarket's revenues from the SnappzMarket bank accounts to conspirator G.S.'s personal bank account, conspirator G.S. would pay SnappzMarket's

operating expenses. Conspirator G.S. would then divide the remaining revenue equally between himself and defendant KODY JON PETERSON.

      g.    During and as a part of the conspiracy, the conspirators distributed over one million (1,000,000) copies of copyrighted apps, with a total retail value of over $1.7 million, to SnappzMarket users and others, in the Northern District of Georgia and elsewhere, all without authorization from the software developers and other copyright owners of the apps. As a result of the conspiracy and the illegal reproduction and distribution of copies of copyrighted apps, the copyright owners of these apps suffered losses.

## Overt Acts

4.    In furtherance of this conspiracy, and to effect the objects and purposes thereof, defendant KODY JON PETERSON and his co-conspirators committed the following overt acts within the Northern District of Georgia and elsewhere, including but not limited to the following:

      a.    On or about June 5, 2011, during online chat sessions, conspirators G.S., J.T., and defendant KODY JON PETERSON agreed to create a new alternative market for Android mobile device apps.

      b.    On or about June 10, 2011, conspirator S.W. provided various logo designs to conspirator G.S. for the SnappzMarket website.

c.  On or about June 12, 2011, conspirator J.T. registered the web domain name www.snappzmarket.com for the creation of an alternative marketplace for Android apps.

d.  On or about June 12, 2011, during online chat sessions, conspirator G.S. negotiated and agreed to pay conspirator J.T. for server hosting for the purpose of hosting an alternative marketplace for Android apps.

e.  On or about June 12, 2011, during online chat sessions with other conspirators, conspirator J.T. agreed to ignore any notices to take down pirated copies of copyrighted works that he received from copyright owners pursuant to the Digital Millennium Copyright Act ("DMCA takedown notices").

f.  On or about June 14, 2011, conspirator G.S. sent a payment to conspirator J.T. for the registration of the web domain name www.snappzmarket.com.

g.  On or about June 15, 2011, conspirator G.S. created a PayPal account in the name of SnappzMarket and linked his personal bank account to the SnappzMarket PayPal account.

      h.      On or about June 17, 2011, conspirators G.S. and J.T. took steps necessary to conceal the registration information of www.snappzmarket.com from being viewed by the general public.

      i.      On or about June 17, 2011, in an online chat, defendant KODY JON PETERSON appointed conspirator S.W. to be the SnappzMarket discussion board moderator upon public launch of SnappzMarket.

      j.      On or about June 24, 2011, defendant KODY JON PETERSON and his co-conspirators released SnappzMarket 1.0 to the general public.

      k.      On or about June 27, 2011, defendant KODY JON PETERSON and conspirator G.S. created Facebook accounts with fictitious names to conceal the identity of the owners and operators of SnappzMarket.

      l.      On or about June 29, 2011, conspirator S.W. tested a new release of the SnappzMarket application to ensure it functioned as designed.

      m.      On July 11, 2011 and July 12, 2011, conspirator G.S. provided passwords via email to defendant KODY JON PETERSON for (1) the admin interface on a server related to SnappzMarket operations, (2) e-mail accounts for www.snappzmarket.com accounts, (3) database server accounts for SnappzMarket, twitter accounts, and an e-mail address labeled "Server guys email" which belonged to conspirator J.T.

  n. On August 1, 2011, conspirator J.T. provided a server for the web domain name www.snappzmarket.com and provided the login details to conspirator G.S. via e-mail.

  o. On or about August 5, 2011, conspirator G.S. created a Google Adsense account for SnappzMarket for the purpose of obtaining revenue from advertisements presented to SnappzMarket users.

  p. Between August 26-28, 2011, an FBI undercover employee who was also a SnappzMarket subscriber, in the Northern District of Georgia, downloaded 1,823 copies of pirated apps from SnappzMarket's computer servers.

  q. On or about September 8, 2011, conspirator G.S. contacted via email an Internet hosting provider located in India to inquire how they deal with takedown notices pursuant to the Digital Millennium Copyright Act and expressed an interest in leasing servers from the India-based provider.

  r. On September 17, 2011, conspirator S.W. provided via email a logo to conspirator G.S. for the 2.0 release of SnappzMarket.

  s. On October 29, 2011, conspirator G.S. e-mailed to defendant KODY JON PETERSON the SnappzMarket 2.0 release logo that conspirator G.S. had received from conspirator S.W.

t.  On November 17, 2011, defendant KODY JON PETERSON emailed conspirator G.S. new login credentials to give conspirator G.S. direct access to the SnappzMarket server.

u.  On February 3, 2012, during online chat sessions, defendant KODY JON PETERSON and conspirator G.S. agreed to send conspirator J.T. money to help him with bills related to SnappzMarket, with defendant KODY JON PETERSON stating that "we owe a lot of snappz to that guy" and "he has been with us from the start."

v.  On February 3, 2012, an FBI undercover employee who was also a SnappzMarket subscriber, in the Northern District of Georgia, downloaded 1096 copies of pirated apps from SnappzMarket's computer servers.

w.  On February 4, 2012, defendant KODY JON PETERSON advised conspirator J.T. that conspirator G.S. and defendant KODY JON PETERSON had agreed to send conspirator J.T. approximately $600.00 to help with expenses, stating that they really appreciated everything conspirator J.T. had done for SnappzMarket.

x.  On February 4, 2012, during online chat sessions, conspirator J.T. confirmed that he received $315.00 via PayPal.

y. On May 25, 2012, an FBI undercover employee who was also a SnappzMarket subscriber, in the Northern District of Georgia, downloaded 543 copies of pirated apps from SnappzMarket's computer servers.

z. On May 11, 2012, defendant KODY JON PETERSON sent a beta copy of the SnappzMarket app to conspirator G.S. for testing.

All in violation of Title 18, United States Code, Section 371.

SALLY QUILLIAN YATES
*UNITED STATES ATTORNEY*

CHRISTOPHER C. BLY
*ASSISTANT UNITED STATES ATTORNEY*
Georgia Bar No. 064634
75 Spring Street, S.W., Suite 600
Atlanta, Georgia 30303
404-581-6000


MYTHILI RAMAN
*ACTING ASSISTANT ATTORNEY GENERAL*

JOHN H. ZACHARIA
*ASSISTANT DEPUTY CHIEF FOR LITIGATION*
District of Columbia Bar No. 456867
U.S. Department of Justice, Criminal Division
Computer Crime and Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20530
202-305-2310